<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MONIQUE CRETE and DAVID GIUSTINIANI individually, and for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RESORT CONDOMINIUMS INTERNATIONAL, LLC; and FIA CARD SERVICES, N.A.,<br><br>Defendants. | Civil Action No.: 09-5665<br><br><br><u>**OPINION**</u> |

**SHERIDAN, U.S.D.J.**

This matter involves four parties: Plaintiff Monique Crete ("Ms. Crete") and Plaintiff David

Giustiniani ("Mr. Giustiniani") (collectively, "Plaintiffs"), and Defendant Resort Condominiums

International, LLC ("RCI") and Defendant FIA Card Services, N.A. ("FIA") (collectively,

"Defendants"). This matter comes before the Court on two motions: (1) RCI's motion to dismiss,

or alternatively, to compel joinder of Lifestyles Holidays Vacation Club Management, S.A.

("LHVC") ("RCI's Motion"); and (2) FIA's motion to dismiss ("FIA's Motion"). On April 22,

2010, Plaintiffs filed a second amended class action complaint ("Plaintiffs' Second Amended

1

Complaint").[1]  Plaintiffs' Second Amended Complaint sets forth four causes of action: (1) a violation of the New Jersey Consumer Fraud Act (the "NJCFA"); (2) unjust enrichment; (3) fraud;[2] and (4) a violation of RICO (at 18 U.S.C. § 1962(c)).[3]  For the reasons set forth below, this Court grants RCI's Motion and grants FIA's Motion.

## I.   Statement of the Facts

Plaintiffs set forth the following allegations in Plaintiffs' Second Amended Complaint.

Ms. Crete is an individual residing in Vermont and is a customer of both RCI and LHVC. Mr. Giustiniani is an individual residing in New York and is a customer of RCI, LHVC, and FIA.[4] RCI is a limited liability company and maintains its principal place of business in New Jersey.  RCI is a "timeshare organizer" and provides services to millions of members.  These members currently

---

[1]

As discussed below, on May 24, 2010, Plaintiffs also filed a proposed Racketeer Influenced and Corrupt Organizations ("RICO") case order ("Plaintiffs' RICO Case Statement").

[2]

Plaintiffs' fraud cause of action is set forth against only RCI, *not FIA*.

[3]

The procedural history of this case is as follows.  On November 5, 2009, Plaintiffs initiated the instant action by filing a complaint ("Plaintiffs' Original Complaint") against RCI *only*. Plaintiffs' Original Complaint included five causes of action: (1) a violation of the NJCFA; (2) unjust enrichment; (3) fraud; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing.  On February 5, 2010, Plaintiffs filed an amended complaint ("Plaintiffs' First Amended Complaint") against RCI, LHVC, and Bank of America, N.A.  Plaintiffs' First Amended Complaint included six causes of action: (1) a violation of the NJCFA; (2) unjust enrichment; (3) fraud; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; and (6) a violation of RICO (at 18 U.S.C. § 1962(c)).

[4]

Although Plaintiffs named *FIA* as a defendant in Plaintiffs' Second Amended Complaint, Plaintiffs often refer to *Bank of America* in Plaintiffs' Second Amended Complaint.  Plaintiffs allege that FIA is a wholly-owned subsidiary of NB Holdings Corp. of Bank of America Corporation. Because of this assertion – and because Plaintiffs chose to name "FIA" and not Bank of America in Plaintiffs' Second Amended Complaint – this Court is convinced that Plaintiffs referred to Bank of America in error, and that, at all such times, Plaintiffs intended to make reference to FIA.

have access to approximately 3,700 vacation resorts, including six Dominican Republic vacation resorts operated under LHVC. FIA is a wholly-owned subsidiary of NB Holdings Corp. of Bank of America Corporation, and maintains its principal headquarters in Delaware. FIA maintains a partnership with RCI. Under this partnership agreement, FIA provides financing assistance to RCI's customers through co-branded credit cards.

Plaintiffs generally contend that RCI, FIA, and LHVC "clearly act[ed] in concert" in convincing Ms. Crete and Mr. Giustiniani to purchase LHVC memberships (the "Memberships"). Plaintiffs allege that FIA "co-brands" credit cards with RCI for customers to use at LHVC-operated facilities. LHVC salesmen promote these co-branded credit cards specifically for the financing of customers' purchases of the Memberships. Furthermore, LHVC markets LHVC resorts as RCI-affiliated resorts that maintain access to RCI's networks and perks. According to Plaintiffs, RCI benefits from listing LHVC resorts as vacation options for RCI members. In addition, Plaintiffs maintain that RCI benefits from the significant profits that RCI derives from Membership fees that LHVC collects from members.

<u>Ms. Crete's Allegations Against RCI and FIA</u>

In April of 2008, Ms. Crete traveled to a LHVC-affiliated resort in the Dominican Republic. At one point during Ms.Crete's stay in the Dominican Republic, various LHVC salesmen induced Ms. Crete to purchase a Membership by falsely making statements regarding: (1) availability; (2) customer service; (3) guarantees regarding prices and accomodations; (4) amenities and activities; (5) takeover of timeshares; (6) the opportunity to turn a profit; and (7) the refund policy. One of these LHVC salesmen promised Ms. Crete that if Ms. Crete purchased a Membership, Ms. Crete would be able to speak regularly and quickly with Ms. Crete's own personal representative.

3

Moreover, according to Ms. Crete, this same LHVC salesman promised Ms. Crete that purchasing a Membership would provide Ms. Crete with easy access to an entire network of RCI-supported resorts.  This same LHVC salesman assured Ms. Crete that the Membership could be resold, and that Ms. Crete could actually make money on such a sale.  Furthermore, the LHVC salesman reassured Ms. Crete that – at any point over the following year – Ms. Crete could cancel the plan if she so desired.  The LHVC salesman also convinced Ms. Crete to purchase the Membership by offering to take over Ms. Crete's existing timeshare, pay the maintenance fees on this existing timeshare, and resell Ms. Crete's existing timeshare.

Shortly after Ms. Crete returned home, Ms. Crete sent an e-mail to Ms. Crete's designated LHVC representative requesting that a friend be able to use Ms. Crete's Membership for an upcoming vacation.  The LHVC representative did not respond to Ms. Crete's e-mail for three days, however, at which point Ms. Crete's friend was no longer able to make use of Ms. Crete's Membership.

In June of 2008, Ms. Crete herself sought to utilize her Membership in Scottsdale, Arizona. Ms. Crete, however, was denied access to any one or two bedroom apartments.  Instead, Ms. Crete was offered access to a villa which cost three times the amount Ms. Crete would have paid for a two bedroom apartment.  At the same time, Ms. Crete e-mailed her designated LHVC representative in order to request access to a resort in Hawaii for the end of October of 2008.   According to Ms. Crete, no representative from LHVC ever responded to Ms. Crete's e-mail request.

Later, Ms. Crete questioned LHVC on whether LHVC would rent out Ms. Crete's Membership access.  The LHVC sales representative with whom Ms. Crete spoke claimed that LHVC would not perform such an action.  The sales representative stated that Ms. Crete was herself

4

responsible for renting out her Membership.

In September of 2008, Ms. Crete decided to cancel her Membership. LHVC refused to cancel Ms. Crete's Membership, however, and instead informed Ms. Crete that Ms. Crete had made "too much use" of Ms. Crete's Membership to be permitted a refund. The LHVC sales representative stated that Ms. Crete's only option for disposing of Ms. Crete's Membership was to place the Membership in the "resale program," but that the LHVC sales representative was unaware of any customer who had ever successfully resold his/her Membership through this resale program.

According to Ms. Crete, LHVC has forced Ms. Crete to pay the full amount of Ms. Crete's contract.

<u>Mr. Giustiniani's Allegations Against RCI and FIA</u>

In October of 2008, Mr. Giustiniani spent time at a LHVC resort in the Dominican Republic while participating in a RCI-administered timeshare exchange program. At one point during this vacation, various LHVC salesmen induced Mr. Giustiniani to purchase a Membership by falsely making statements regarding: (1) availability; (2) customer service; (3) guarantees regarding prices and accomodations; (4) amenities and activities; (5) takeover of timeshares; (6) the opportunity to turn a profit; and (7) the refund policy. Mr. Giustiniani ultimately decided to purchase a Membership primarily because of a LHVC sales representative's promise that LHVC would take over Mr. Giustiniani's current timeshare in New York and assume all maintenance fees associated with this New York timeshare. The LHVC sales representative assured Mr. Giustiniani that Mr. Giustiniani would have easy access to LHVC villas (and RCI-affiliated resorts), would not need to book these villas and resorts far in advance, and there would be an unlimited availability of these villas and resorts.

Moreover, the LHVC sales representative assured Mr. Giustiniani that Mr. Giustiniani would be able to speak regularly and quickly with a personal LHVC representative.  In addition, the LHVC sales representative indicated that Mr. Giustiniani could profit from his LHVC Membership by renting out use of his LHVC Membership to family, friends, and even strangers.  The LHVC sales representative further stated that Mr. Giustiniani would be able to place his timeshare into a resale program and the fees that Mr. Giustiniani paid would be completely refunded if Mr. Giustiniani was dissatisfied with LHVC's services.  After Mr. Giustiniani decided to purchase a Membership, the LHVC salesman checked Mr. Giustiniani's credit rating and registered Mr. Giustiniani for a FIA-RCI credit card with a $20,000.00 credit limit.

Soon after Mr. Giustiniani returned to New York, Mr. Giustiniani attempted to use Mr. Giustiniani's Membership for a vacation for Mr. Giustiniani's son.  The LHVC sales representative with whom Mr. Giustiniani spoke, however, told Mr. Giustiniani that there existed an eight month waiting period for the villas that Mr. Giustiniani requested.  At the time that Mr. Giustiniani purchased his Membership, a LHVC sales representative explicitly told Mr. Giustiniani that Mr. Giustiniani would have easy access to such villas.  Moreover, according to Mr. Giustiniani, the LHVC salesman specifically promised Mr. Giustiniani access to a villa if Mr. Giustiniani booked such a villa ninety days in advance.

Mr. Giustiniani has sought to place his Membership in the LHVC resale program.  Despite this, Mr. Giustiniani continues to be charged a monthly portion of the outstanding $20,000.00 that Mr. Giustiniani financed on Mr. Giustiniani's FIA-RCI credit card.  Moreover, LHVC has never taken over Mr. Giustiniani's existing timeshare, and Mr. Giuistinani is still charged maintenance fees on his existing timeshare.

6

II.    <u>**Legal Discussion**</u>

<u>Standard on a Motion to Dismiss</u>

When evaluating a motion to dismiss for failure to state a claim, the court is required to accept as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom, and to view such allegations and inferences in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-pled allegations as true for the purposes of the motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949;  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). On the contrary, "[t]he pleader is required to 'set forth sufficient information to outline the elements of [its] claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). A party must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

<u>The Court Will Not Consider the Allegations Set Forth in Plaintiffs' RICO Case Statement.</u>

As a preliminary matter, this Court must decide whether to evaluate Plaintiffs' RICO Case Statement in considering whether to grant RCI's Motion and FIA's Motion. A plaintiff properly files a RICO case statement only when *a judicial officer has requested that the plaintiff file a RICO case*

7

*statement. See* L. Civ. R. 16.1(b)(4) ("In a civil action arising under [the RICO provisions], the Judge or Magistrate Judge may require a RICO case statement to be filed and served . . . .").

In this particular case, no judicial officer ordered Plaintiffs to file Plaintiffs' RICO Case Statement. As a result, Plaintiffs' RICO Case Statement is "equivalent to a supplemental pleading." *See HT of Highlands Ranch, Inc. v. Hollywood Tanning Syss.*, 590 F. Supp. 2d 677, 692 (D.N.J. 2008) (citation omitted). Because neither Defendants nor the Court gave Plaintiffs the permission to file such a "supplemental pleading," Plaintiffs improperly filed Plaintiffs RICO Case Statement. *See* Fed. R. Civ. P. 15(a)(2) (stating that where a party has already amended its initial complaint, "a party may amend its [complaint] only with the opposing party's written consent or the court's leave"). As a result, this Court will not consider Plaintiffs' RICO Case Statement in ruling upon RCI's Motion or FIA's Motion.

<u>Plaintiffs' First Cause of Action for a Violation of the NJCFA Is Dismissed.</u>

RCI disputes whether the NJCFA is applicable to the facts presented here. RCI states: "The allegations of fraud in [Plaintiffs' Second Amended Complaint] have no relationship to New Jersey and, thus, cannot support a claim under the NJCFA." RCI is correct.

A significant conflict likely exists between the consumer protection laws of the Dominican Republic and the NJCFA. *See Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 461 (D.N.J. 2009) (citations omitted) ("Courts have recognized that significant conflicts exist between the NJCFA and the consumer protection statutes of other states.") When there exists such a conflict, a federal court must apply the conflict rules of the state in which the federal court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New Jersey law, the body of law that governs the litigation is the law of the forum with the "most significant relationship" to the litigation.

8

*P.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008). This "most significant relationship" test applies even when a Court must consider whether a *foreign country's* law is applicable. *See, e.g., El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 990 (S.D. Tex. 2004) ("The relevant [] factors illustrate that Mexican law should govern Plaintiff's tort claims.")

Under this "most significant relationship" test, this Court must evaluate the standards set forth in the Restatement (Second) of Conflict of Laws section 148. *See Clark v. Prudential Ins. Co. of Am.*, 2009 WL 2959801, at *6 (D.N.J. Sept. 15, 2009). Where a defendant's alleged misrepresentation took place in one forum and a plaintiff's detrimental reliance took place in a different forum – the situation presented here – the court must consider the following factors:

> (a) [T]he place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false presentations of the defendant.

*Id.* at *6-7 (*quoting* Restatement (Second) of Conflict of Laws § 148 (1971)).

Considering the above-referenced six factors, this Court is convinced that the NJCFA is inapplicable to the facts at hand. In fact, Plaintiffs concede in Plaintiffs' opposition papers that "[f]actors [(a)-(c) and (e)-(f)] all point to the Dominican Republic, and [factors (e)-(f)] also point to other international locations." Despite this, Plaintiffs contend that New Jersey remains an

appropriate forum to litigate this dispute because "RCI's location in New Jersey is the only constant for both Plaintiffs and the members of the putative class."  Moreover, according to Plaintiffs, RCI "operates [RCI's] corporate headquarters in Parsippany, New Jersey" and FIA "conducts substantial business in New Jersey, with at least thousands of card holders in the state."

The Third Circuit has explicitly ruled that a claim should not survive where its only connection to a state is the location of a defendant.  *See Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010) ("The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters.").  Here, outside of Plaintiffs's allegations with respect to Defendants' corporate ties to New Jersey, Plaintiffs have failed to establish the connection this dispute maintains with New Jersey.  Ms. Crete is from Vermont.  Mr. Giustiniani is from New York.  The incidents in question took place in the Dominican Republic.  The facts of this case do not involve New Jersey.[5]  As a result, this Court holds that Plaintiffs' first cause of action for a violation of the NJCFA is dismissed.

<u>Plaintiffs' Second Cause of Action for Unjust Enrichment Is Dismissed.</u>

**Rule 9(b) Requires Plaintiffs to Plead Plaintiffs' Unjust Enrichment Claim with Particularity.**

A party alleging "fraud" is obligated to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The District of New Jersey has required a party setting forth an unjust enrichment claim to state the fraudulent acts underlying the unjust enrichment claim with the "particularity" required by Rule 9(b).  *See, e.g., Va. Sur. Co., Inc. v. Macedo*, 2009 WL

---

[5]

This Court reaches this conclusion after examining the Restatement (Second) of Conflict of Laws section 148 factors above, as well as "the remaining contacts set forth in [Restatement (Second) of Conflict of Laws section 145] and the cornerstone principles of [Restatement (Second) of Conflict of Laws section 6]." *Camp Jaycee*, 197 N.J. 132 at 144.

3230909, at * 11 (D.N.J. Sept. 30, 2009) ("Plaintiff . . . has failed to plead the underlying fraud, which serves as the basis for its unjust enrichment claim, with particularity, as required by Rule 9(b)."); *see also In re Fruehauf Trailer Corp.*, 250 B.R. 168, 198 n. 30 (D. Del. 2000) ("The Court will . . . apply[] Rule 9(b) only when allegations of fraud underlie the [unjust enrichment] claim[]" at issue.).

Here, Plaintiffs' unjust enrichment claim revolves around Defendants' allegedly fraudulent actions. For example, Plaintiffs state: "Through [Defendants'] unlawful misrepresentations and business practices . . ., Defendants . . . unlawfully enriched themselves at the detriment of innocent consumers." Similarly, Plaintiffs maintain: "RCI receive[d] increased revenues from the *fraudulent sale* of vacation club Memberships." (emphasis added).

Because Plaintiffs' unjust enrichment claim is squarely premised on Defendants' allegedly fraudulent actions, Plaintiffs must plead Plaintiffs' unjust enrichment claim with the particularity required by Rule 9(b).

> **Plaintiffs' Unjust Enrichment Claim Should Be Dismissed Because Plaintiffs Have Failed to Allege that Plaintiffs Provided A Benefit to Either RCI or FIA and Plaintiffs Have Failed to Allege that Plaintiffs Expected Any Performance from Either RCI or FIA.**

A plaintiff presents a viable unjust enrichment claim where the plaintiff asserts that: "(1) at [the] plaintiff's expense (2) [the] defendant received [a] benefit (3) under circumstances that would make it unjust for [the] defendant to retain [the] benefit without paying for [the benefit]." *In re K-Dur Antitrust Litig.*, 338 F. Supp.2d 517, 544 (D.N.J. 2004) (citation omitted). A plaintiff presenting an unjust enrichment claim must demonstrate that: (1) the plaintiff "*performed or conferred a benefit on [the] defendant*" and (2) at the same time, "[the plaintiff] expected remuneration *from the defendant*." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)

11

(emphasis added).  A plaintiff maintains a viable unjust enrichment claim only where the defendant's failure to remunerate the plaintiff "enriche[s] [the] defendant beyond [the defendant's] contractual rights." *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (internal quotation marks and citation omitted).

Plaintiffs have failed to adequately allege that Plaintiffs provided a "benefit" to either RCI or FIA. Plaintiffs generally state that "members *must pay* a[] RCI Membership fee upon purchase, as well as recurring dues to RCI directly." (emphasis added).  Plaintiffs never state, however, that Plaintiffs – Mr. Crete and Mr. Giustiniani – ever actually made such payments *to RCI*.  In fact, Plaintiffs at one point indicate that Ms. Crete made payments to LHVC, not RCI: "LHVC has forced [Ms. Crete] to pay the full amount of her contract . . . ."

With respect to Plaintiffs' unjust enrichment claim against FIA, Plaintiffs assert that FIA was unjustly enriched through the collection of "late fees," interchange fees," and "interest." Plaintiffs never indicate, however, that fee and interest provisions were not included in an *actual contract* governing the business relationship between Plaintiffs and FIA.  In fact, it seems that these provisions are specifically the sort of standard terms that would be included in a contract with a lender such as FIA.

It is well-established that "[q]uasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000) (citations omitted).  "[R]ecovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).  As mentioned, the crux of Plaintiffs' unjust enrichment claim against FIA revolves around FIA's collection of money (in the form of "fees" and "interest")

12

to which FIA presumably was entitled under FIA's contracts with Plaintiffs.  As a result, Plaintiffs have not adequately pled that FIA "was enriched" beyond the terms of FIA's contracts with Plaintiffs.

Moreover, nothing indicates that Plaintiffs "expected remuneration" from any entity beyond LHVC.  Plaintiffs have directed the Court's attention to a slew of paragraphs in Plaintiffs' Second Amended Complaint in an effort to demonstrate that Plaintiffs satisfactorily "ple[d] facts showing [that] [Plaintiffs] expected remuneration from Defendant[s], and [their] partners . . . when [Plaintiffs] signed up for [Plaintiffs'] Memberships."  These portions of Plaintiffs' Second Amended Complaint, however,  reflect only representations made by LHVC salesmen, not RCI or FIA employees.  For example, one such paragraph provides that "[a] [LHVC] salesman promised [Ms. Crete] that, if [Ms. Crete] enrolled in LHVC's program, [Ms. Crete] would be able to speak regularly and quickly with [Ms. Crete's] own, personal representative.  This put [Ms. Crete] at ease."  Similarly, another paragraph provides that "[t]he [LHVC] salesman also assured [Mr. Giustiniani] that [Mr. Giustiniani] would be able to speak regularly and quickly with [Mr. Giustiniani's] own, personal LHVC representative."  Such statements indicate that Plaintiffs "expected remuneration" from LHVC, not from RCI or FIA.

Plaintiffs have failed to satisfactorily plead that Plaintiffs provided a benefit to RCI or FIA. In addition, Plaintiffs have failed to properly plead that Plaintiffs expected performance from RCI or FIA.  As a result, Plaintiffs' unjust enrichment claim must be dismissed.

Plaintiffs' Third Cause of Action for Fraud[6] Should Be Dismissed.

A party sets forth a viable fraud claim where the claiming party alleges that: (1) the defendant made a material misrepresentation of fact; (2) with knowledge of the falsity of the fact; (3) with the intent that the claiming party would rely upon the misrepresentation; (4) resulting in the claiming party's reliance upon the misrepresentation; and (5) the reliance detrimentally affected the claiming party.  *See Jewish Ctr. of Sussex Cty. v. Whale,* 86 N.J. 619, 624 (1981) (citation omitted).  As mentioned above, a fraud claim is subject to stringent pleading requirements because "[a plaintiff] must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b) (emphasis added).

As part of Plaintiffs' effort to demonstrate that Plaintiffs adequately pled Plaintiffs' fraud cause of action, Plaintiffs rely upon a particularly conclusory portion of Plaintiffs' Second Amended Complaint: "RCI provided the branding and sales support to LHVC, endorsing LHVC and actively helping LHVC develop [RCI's] sales strategy and plans."  Although Plaintiffs rely upon other paragraphs in Plaintiffs' Second Amended Complaint, *none* of these paragraphs make reference to any allegedly fraudulent actions taken by *RCI*, and *all* of these paragraphs refer to actions taken by *LHVC*.[7]  Plaintiffs' allegations with respect to RCI-provided "branding and sales support" do not meet the heightened pleading standard.  As RCI accurately points out, such conclusory allegations

---

[6]

As mentioned above, Plaintiffs assert Plaintiffs' third cause of action for fraud against only RCI, not FIA.

[7]

For example, Plaintiffs state the following in Plaintiffs' Second Amended Complaint: (1) "[Ms. Crete] was induced to purchase a Membership during a [p]itch where *[LHVC] salesmen* falsely made promises . . . .;" (2) "[Mr. Giustiniani] was induced to purchase a Membership during a [p]itch where *[LHVC] salesmen* falsely made promises . . . .;" and (3) "*[the LHVC] salesmen* lie about a product which LHVC and RCI do not provide."

14

are deficient because "[Plaintiffs] do not identify the 'sales strategy,' identify a misrepresentation made by a[] RCI representative [or] reliance by Plaintiffs upon a representation made by RCI, or otherwise lend any plausibility to Plaintiffs' claim of fraud."

By providing nothing more than conclusory allegations against RCI – and instead focusing on actions taken by LHVC employees – Plaintiffs have failed to adequately plead Plaintiffs' fraud claim. As a result, this Court dismisses Plaintiffs' fraud cause of action.

Plaintiffs' Fourth Cause of Action for a Violation of RICO Should Be Dismissed.

Title 18 United States Code section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity* or collection of unlawful debt.

(emphasis added).  A plaintiff satisfactorily alleges a RICO violation under this provision where the plaintiff pleads that there exists: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity; and (5) and which results in injury. *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.,* 87 Fed. Appx. 227, 231 (3d Cir. 2003) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  The fraudulent acts that comprise a RICO claim are subject to the heightened pleading requirements under Rule 9(b).[8] *See Lape v. Pennsylvania,* 157 Fed. Appx. 491,

---

[8]

Although Plaintiffs must plead with particularity *the fraudulent acts* alleged in support of Plaintiffs' RICO claim, this Court recognizes that Plaintiffs are not obligated to plead with particularity *the other elements* of Plaintiffs' RICO claim. *See In re Ins. Brokerage Antitrust Litig.,* 2007 WL 1062980, at *7 (D.N.J. Apr. 5, 2007) (citation omitted) ("[T]he heightened pleading requirement of Rule 9(b) appears to be inapplicable to RICO elements other than a fraudulent predicate offense."); *see also Towers Fin. Corp. v. Solomon*, 126 F.R.D. 531, 536 (N.D. Ill. 1989) ("Rule 9(b) applies to [a plaintiff's] RICO claim only to the extent that the [RICO] claim is based on racketeering acts involving fraud. In all other respects, the liberal notice pleading philosophy of the Federal Rules applies to [a plaintiff's] RICO claim.").

497 n. 5) ("The RICO claims against [certain] defendants fail to satisfy Rule 9(b)'s particularity requirement."); *see also Todaro v. Richman*, 170 Fed. Appx. 236, 238 (3d Cir. 2006) ("Because [the plaintiff] relies on fraudulent conduct to form the basis of the RICO violations, under Federal Rule of Civil Procedure 9(b), the violation must be pled with particularity.") (citation omitted).

A RICO "enterprise" includes "any individual, partnership, corporation, association or other legal entity, and any union *or group of individuals associated in fact although not a legal entity.*" 18 U.S.C. § 1961(4) (emphasis added). An "association-in-fact" enterprise[9] exists whenever "a group of persons [is] associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 129 S.Ct. 2237, 2243 (2009) (internal quotation marks and citation omitted).

In order to qualify as an "association-in-fact" enterprise, "a group must have some structure for conducting its affairs." *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1062980 at *7 (citation omitted). In addition, "[s]ince an enterprise must have a common purpose, the enterprise must have at least some fixed system of arrangement, as well as some continuity of personnel to effectuate that purpose." *Ibid.* An "association-in-fact" enterprise must maintain a "structure" that presents itself in three features: (1) "a purpose;" (2) "relationships among those associated with the enterprise;" and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 129 S. Ct. at 2244. A court "should reject [the existence of an] association-in-fact enterprise" when the plaintiff's allegations with respect to the enterprise are "imprecise, vague, conclusory, and lack both clarity and any degree of specificity." *See In re Ins. Brokerage Antitrust Litig.,* 2007 WL 1062980 at *8 (citation omitted).

---

[9]

Plaintiffs appear to maintain only that Plaintiffs have properly pled the existence of an "association-in-fact" enterprise. Plaintiffs do not assert that Defendants maintain a RICO enterprise in the form of a "legal entity."

Plaintiffs contend that the "enterprise" in the instant case consists of Defendants – RCI and FIA – along with LHVC.  Even if Plaintiffs adequately pled the existence of this "enterprise," however, Plaintiffs are still required to allege facts indicating that "[RCI and FIA] participated in the operation or management of the enterprise itself."  *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993); *see also In re Ins. Brokerage Antitrust Litig.,* 2007 WL 1062980 at *12 ("Presuming that a RICO plaintiff sufficiently alleged the structure and, therefore, existence of the enterprise, the plaintiff also must allege some facts indicating that the defendant conducted or participated in the operation or management of the enterprise through the enterprise structure.").

This "operation and management test" is considered "very difficult to satisfy." *Amsterdam Tobacco Inc. v. Philip Morris Inc.,* 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) (internal quotation marks and citations omitted).  "[A]ction involving some degree of decisionmaking" does not necessarily "constitute[] participation in the affairs of an enterprise."  *See Univ. of Md. at Baltimore v. Peat*, 996 F.2d 1534, 1538-39 (3d Cir. 1993).  As a result, a plaintiff's RICO claim is deficient where the plaintiff pleads only "the existence of a business relationship" between a defendant and a party with whom the defendant formed an enterprise. *In re Ins. Brokerage Antitrust Litig.,* 2007 WL 1062980 at *13 (citations omitted); *see also Univ. of Md. at Baltimore*, 996 F.2d 1534 at 1539 ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").  Even a plaintiff that provides business services to an enterprise "with knowledge of the enterprise's illicit nature" does not automatically trigger RICO liability.  *See Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) (citation omitted).

Even if this Court were to assume that Plaintiffs adequately pled the existence of a RICO

"enterprise," it is evident that Plaintiffs have failed to satisfactorily plead that RCI and FIA "managed or operated" the alleged enterprise.  In support of Plaintiffs' claim that RCI and FIA both "managed or operated" the enterprise, Plaintiffs generally state: "Defendants RCI and [FIA], in partnership with LHVC, associate together and collaborate with an enterprise influenced and directed by a pattern of racketeering activity and unlawful money collection." (citation omitted). Similarly, Plaintiffs allege that "RCI, [FIA], and LHVC collude through LHVC's vacation resort enterprise to fraudulently induce vacationers from across the U.S., Canada, and Europe into purchasing timeshares through false promises."  Moreover, according to Plaintiffs, "[u]nder the apparent direction of RCI, which partners with [FIA] and LHVC, all three entities participate, manage, and operate a pattern of racketeering activity, injuring the business and property of Plaintiffs . . . ."

Despite these general allegations as to RCI and FIA's *role* in the enterprise, Plaintiffs have provided little information with respect to the *management and control* that RCI and FIA took *individually* with respect to the enterprise.  Plaintiffs describe RCI's role in the enterprise as follows:

> "As a timeshare industry giant with connections and familiarity of its clientele, *RCI coordinates the fraudulent activity* with its partners LHVC and [FIA].  *RCI provides branding to LHVC salesmen, marketing to [FIA's] issuance of [FIA]-RCI credit cards, and marketing and sales support to LHVC salesmen in order to help seal the sales of Memberships to its own vacation club and that of LHVC*."

(emphasis added).  The generic language – and minimal detail used in such an allegation – does not convince this Court that Plaintiffs adequately pled RCI's involvement in the enterprise.  As RCI accurately points out, although Plaintiffs include "allegations regarding the marketing, support, and direction provided by RCI," Plaintiffs do not *even attempt* "to identify . . . any *specific instructions*

18

*given by RCI to LHVC or FIA*." (emphasis added).

In support of Plaintiffs' claim that FIA "managed or controlled" the enterprise, Plaintiffs state:

> RCI coordinates with [FIA] by co-branding credit cards for use throughout their international timeshare network, including the financing of the purchase of Memberships. [FIA] provides the means for financing the transaction by instantly approving potential buyers for a credit card, or, often, multiple credit cards, bearing the RCI name, each with lines of credit in the tens of thousands of dollars. During the sales pitch, [FIA] provides potential buyers with an incentive to specifically finance through their credit cards, often by knocking thousands of dollars [off] the purchase price if they open an account. This ease of financing is essential for the completion of a successful sale.

These allegations that FIA co-brands credit cards with RCI and offers discounts do not convince this Court that FIA "managed or controlled" the RCI-FIA-LHVC enterprise.

Because Plaintiffs have failed to satisfactorily plead that RCI and FIA "managed or controlled" the affairs of the RCI-FIA-LHVC enterprise, this Court dismisses Plaintiffs' RICO claim.

<u>Although this Court Dismisses All Four Causes of Action, this Court Grants Plaintiffs Twenty-One Days Leave to Amend Plaintiffs' Second, Third, and Fourth Causes of Action.</u>

When a defendant's motion to dismiss is granted, the court should "freely" provide the plaintiff with leave to amend its dismissed causes of action "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Third Circuit has stressed that "[l]iberality is the keystone of [amending federal complaints] . . . [and] [u]nder [this] liberal pleading philosophy . . ., an amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay." *Prof'l Cleaning and Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed. Appx. 161, 165 (3d Cir. 2007) (internal quotation marks

and citation omitted).  A court may deny leave to amend a pleading, however, where any such amendment would prove futile.  *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).

Although Plaintiffs have already amended their initial complaint on two separate occasions, "justice . . . requires" that Plaintiffs be afforded one final opportunity to cure all deficiencies with regard to Plaintiffs' unjust enrichment, fraud, and RICO claims.  *See* Fed. R. Civ. P. 15(a)(2). Despite same, the NJCFA claim is not feasible.  The only connection this case maintains with New Jersey stems from the general business affairs of Defendants.  Because Plaintiffs cannot change the critical facts of the case – Plaintiffs from Vermont and New York and an incident that took place in the Dominican Republic – it is futile to permit another opportunity to amend Plaintiffs' NJCFA claim. As a result, Plaintiffs' NJCFA cause of action is dismissed without leave to amend.

III.    **Conclusion**

In light of the foregoing, this Court dismisses Plaintiffs' second, third, and fourth causes of action with twenty-one days leave to amend.  This Court also dismisses Plaintiffs' first cause of action without leave to amend.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

February 14, 2011